IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

UNITED STATES OF AMERICA,

Plaintiff

v.                                                    CRIMINAL 00-693 (PG)

MARTIRES PAULINO CASTRO,

Defendant

MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

## I.  INTRODUCTION

On October 28, 2002, defendant Martires Paulino-Castro (hereinafter "Paulino" or "defendant") pled guilty to one count of conspiracy to possess with intent to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 846, after reaching an agreement with the government. (Docket No. 624.)  Soon thereafter, on November 6, 2002, the defendant moved *pro se* and then through counsel, to withdraw his guilty plea.  (Docket Nos. 685, 717.)  Such withdrawal is controlled by Rule 11(d)(2)(B) of the Federal Rules of Criminal Procedure.[1]

He argues, *inter alia*, that he pled guilty without the benefit of counsel's advice as to the consequences of such decision.  Rather, the defendant met only with a non-lawyer, who simply read the plea agreement to him.  Paulino further claims that he was never informed

---

[1]Rule 11(d)(2) allows a defendant to withdraw his guilty plea after the court has accepted the same but before sentencing.  Fed. R. Crim. P. 11(d)(2).

CRIMINAL 00-693 (PG)                    2

that by pleading guilty he would be precluded from continuing to litigate the legality of certain wiretaps conducted in the Dominican Republic by law-enforcement agents.  See United States v. Castro, 175 F. Supp. 2d 129 (D.P.R. 2001).  Defendant maintains that had he known his guilty plea extinguished his right to continue contesting the wire interceptions, he would not have pled guilty and would have continued pursuing his claim that the American authorities participated in a joint venture with Dominican agents to conduct illegal wiretaps.  Therefore, it is defendant's position that his plea was not knowingly, voluntarily or intelligently made as required by Rule 11.

The United States responded to the motion to withdraw plea seeking that the court deny the same and emphasizing that the defendant has not met the burden of persuasion in order to withdraw his guilty plea.  In other words, it is the government's position that defendant has not met his burden of demonstrating a "fair and just reason" for requesting the withdrawal.  The government further contends that the transcript of the change of plea hearing demonstrates that defendant's plea was knowingly, voluntarily and intelligently made since the court at all times made sure that the defendant consulted with counsel and that he understood the terms of the agreement.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

### A.  The Evidentiary Hearing

An evidentiary hearing was held before me on January 19, 2005.  John Cicilline, a Rhode Island attorney, testified, adopting his affidavit of December, 2003.  In that

CRIMINAL 00-693 (PG)                    3

affidavit, the attorney attests that from the moment he entered an appearance in the case, the defendant always insisted that he wanted a trial, and that upon returning to Puerto Rico on October 26, 2002, he learned that the defendant had contracted the services of attorney José Franco, and that the case would be a plea.  The plea agreement was received on October 28, 2002.  When it was received, Mr. Franco was not present.  Not being able to discuss the plea agreement with the defendant in the Spanish language, Mr. Cicilline entrusted the discussion of the plea agreement to Carlos Rosado who was "associated in some way with Mr. Franco."  Mr. Cicilline had met Mr. Rosado at MDC Guaynabo earlier in the year and noted that he, Rosado, privately met with clients, dressed as a gentleman and spoke authoritatively about the law.  Mr. Cicilline asked Rosado to go to the cellblock and read the plea agreement to the defendant.  Mr. Cicilline thought that the defendant was cooperating since he had discussed 5K with Rosado.[2]  The defendant was hoping to receive a deal such as was received by Daniel Lynch, a co-defendant.  In the days following the plea, Mr. Cicilline met with the defendant on several occasions and was told that the plea had not been adequately explained and that the individual who had taken the responsibility of explaining the plea was a non-lawyer.  Mr. Cicilline did not initially understand the challenge.  He then advised the defendant to defer action on his *pro-se*

---

[2]I assume that the witness is referring to subsection 5K1.1 of the United States Sentencing Guidelines covering downward departures based on substantial assistance to authorities.  U.S.S.G. § 5K1.1

CRIMINAL 00-693 (PG)                    4

motion to vacate to give the defendant a chance to be debriefed and get a reduced sentence. The attorney assumed that the issue would become moot because the defendant was cooperating.  Indeed, the defendant did meet representatives of the government.  There were at least three meetings with government agents after the defendant filed a *pro-se* motion to withdraw his guilty plea.  Indeed, Mr. Cicilline thought the government was going to open the door of the prison and let the defendant out based upon what he was telling them.  Ultimately, the Assistant United States Attorney did not approve a 5K reduction.  At the evidentiary hearing, Mr. Cicilline testified that he had not informed the defendant of all the things he would be waiving upon pleading guilty.  He said that the defendant always wanted to litigate the search issues and they prepared for trial.  There were limited discussions of a guilty plea because Assistant United States Attorney Jared López wanted the defendant to cooperate.  When the plea agreement arrived,  José Franco said he had to leave for a funeral and Rosado was with him.  Mr. Cicilline had discussed a 5K but the attorney knew that the recommendation in the agreement was for 15 years, and he also knew that the defendant never thought that he would get 15 years.  He noted that he never had a serious discussion with the defendant about numbers.  While the plea was beneficial, it was not what he would be expecting.  Mr. Cicilline always brought an interpreter with him and had two lawyers who spoke Spanish.

CRIMINAL 00-693 (PG)                    5

Attorney Tomás Castro, an attorney from the Dominican Republic, was retained by the defendant in 2002.  He testified in relation to the wire interceptions in the Dominican Republic, making reference to a decision of the highest court of the Republic which decided that the orders to intercept communications issued by the district attorney in relation to Martires Paulino Castro were illegal since they were not in accord with the requirements of the Dominican Constitution.  The judgment is dated October 15, 2003.  It also applied to all wire interceptions made under a regulation issued by the district attorney of Santo Domingo.

## B.  The Change of Plea Colloquy

To place the government's position in better perspective, I relate what apparently occurred at the change of plea hearing held on October 28, 2002.  In theory, the defendant was represented by three attorneys with one being excused due to a funeral, and the other, Daniel Morrison, unexplainably absent.  Thus, the defendant was ultimately represented at that hearing by Mr. Cicilline.  The defendant agreed to proceed without Mr. Franco.  The defendant, an industrial engineer, agreed that he would be pleading guilty to count four of the indictment, a drug conspiracy count.  He informed that he had enough time to consult with Mr. Franco and Mr. Cicilline, and was satisfied with their services until then.  The defendant acknowledged not having any doubts about pleading guilty.  He also acknowledged his rights had he gone to trial, and also acknowledged waiving the right to

CRIMINAL 00-693 (PG)                    6

incriminate himself.  He noted that his attorney had explained to him what the minimum

and maximum sentences provided by law, which included a minimum of 10 years.  He

understood this as well as the provisions for a fine, supervised release for at least five years,

and the special monetary assessment.  The defendant acknowledged that nobody forced or

threatened him to plead guilty and that no one had promised him anything outside of the

plea agreement.  He agreed that no predictions were made to him as to what his sentence

would be.  When shown the plea agreement, which was supposedly explained to him by his

attorney, the defendant noted that it had been explained to him and that he was explained

that the judge is not bound by the agreement.  The judge noted that the court was not

bound by the agreement, nor by any sentencing guidelines calculations, stipulations or

sentencing recommendations.   The defendant acknowledged this.   The defendant

acknowledged that he was explained that the court could impose a high sentence, including

life, and that if he received a sentence that was higher than one he expected, such would

not be grounds to withdraw the plea.  The judge went through the guideline calculations,

concluding at a possible sentencing range of 188 to 235 months.  The defendant also

understood that his lawyer had explained his failure to meet the requirements of the safety

valve.  The defendant also agreed that he was rendered effective assistance of counsel by

both Mr. Franco and Mr. Cicilline.  Making reference to facts in the plea agreement which

the defendant was apparently aware of, the court asked the defendant if the agreement

CRIMINAL 00-693 (PG)                         7

contained all of the promises, terms and conditions agreed to by the lawyers and the prosecutor.   The defendant said yes.   The defendant also agreed that no further adjustments were to be sought by the parties.  When asked the following question:  Aside from the plea agreement, any other promises have been made to you to induce you to plead guilty? The defendant answered, "No, sir." The judge also explained that the sentence was appealable.  The defendant also agreed to submit to a debriefing by the government and that if the information provided was truthful, he would be sentenced to the lower end of the guideline range.  The defendant admitted to the facts loosely paraphrased by the court in relation to count four of the indictment.

### III.  APPLICABLE LAW AND ANALYSIS

The are two main issues raised by the defendant in support of his motion to withdraw his guilty plea.  The first one addressed by me is the general assertion that the plea agreement was not explained to him by a lawyer.  The second issue addressed is defendants' contention that his decision to plead guilty was not knowing and voluntary since he was never informed that by pleading guilty he would be forfeiting his right to continue challenging the wiretaps conducted by law-enforcement agents in the Dominican Republic.  But first, I discuss the applicable law.

Rule 11 of the Federal Rules of Criminal Procedure, requires the court, in accepting a guilty plea, to address the defendant and make sure he understands the following:  the

CRIMINAL 00-693 (PG)                    8

nature of the charges against him, the minimum and maximum penalties provided by the law, his right to be represented by an attorney, the right to plea not guilty, and ensure the plea is voluntary among other rights.  See Fed. R. Crim. P. 11(c); see also United States v. Ventura-Cruel, 356 F.3d 55, 59 (1st Cir. 2003).  This circuit has identified three "core concerns" of Rule 11:  1) absence of coercion; 2) the defendant's understanding of the charges; and 3) the defendant's knowledge of the consequences of the guilty plea.  While technical violations of Rule 11 may often be deemed harmless, a total failure to address one of Rule 11's "core concerns" mandates that the guilty plea be set aside.  In the absence of such a "total failure," the question to be determined is whether deficiencies in the Rule 11 hearing affected the defendant's "substantial rights." Fed. R. Crim. P. 11(h); United States v. Gray, 63 F.3d 57, 60 (1st Cir. 1995); see also United States v. Cotal-Crespo, 47 F.3d 1, 5 (1st Cir. 1995).  Furthermore, in determining whether there has been a violation of one of the core concerns of Rule 11, we review the totality of the circumstances surrounding the Rule 11 hearing at which the defendant pled guilty.  United States v. Gray, 63 F.3d at 60; see also United States v. Cotal-Crespo, 47 F.3d at 5.

        With the above in mind, it must be noted that a defendant possesses no absolute right to retract his plea.  See United States v. Pellerito, 878 F.2d 1535, 1537 (1st Cir. 1989).  Recently, the First Circuit reiterated the notion that after the district court has accepted a plea of guilty but before the sentencing, a defendant's request to withdraw a plea

CRIMINAL 00-693 (PG)                    9

must be liberally allowed for any "fair and just reason." United States v. Mescual-Cruz,

387 F.3d 1, 6 (1st Cir. 2004), cert. denied, No. 04-8273, 2005 WL 166697 (U.S. Feb. 22,

2005), cert. denied, No. 04-8215, 2005 WL 123252 (U.S. Feb. 22, 2005) (quoting Fed.

R. Crim. P. 11(d)(2)(B)).  The defendant has the burden of persuasion in these types of

cases.  See United States v. Marrero-Rivera, 124 F.3d 342, 347 (1st Cir. 1997) (citations

omitted).  Several factors must be considered in determining whether the defendant has

met his burden, including "whether the plea was knowing, voluntary and intelligent within

the meaning of Rule 11." United States v. Cotal-Crespo, 47 F.3d at 3.  Other factors that

the court must consider include:  "1) the force and plausibility of the proffered reason; 2)

the timing of the request; 3) whether the defendant has asserted his legal innocence; and

4) whether the parties had reached a plea agreement." Id. at 4 (citing United States v.

Pellerito, 878 F.2d at 1537); United States v. Buckley, 847 F.2d 991, 998 (1st Cir. 1988);

United States v. Kobrosky, 711 F.2d 449, 454 (1st Cir. 1983).  A "fair and just reason" is

a necessary, but not sufficient, predicate to a plea withdrawal.  See United States v.

González, 202 F.3d 20, 23 (1st Cir. 2000); United States v. Doyle, 981 F.2d 591, 594 (1st

Cir. 1992).  If the defendant advances a plausible reason, the court should also weigh the

prejudice, if any, to the government.  United States v. Ramos, 810 F.2d 308, 313 (1st Cir.

1987); United States v. Kobrosky, 711 F.2d at 455.

CRIMINAL 00-693 (PG)                    10

As to the first issue, a detailed analysis of the Rule 11 colloquy shows the that court complied with the core concerns requirement. The court assured the defendant understood his rights in regards to counsel, the court made sure the defendant understood the charges against him, the maximum and minimum time of incarceration, the failure of an applicable safety valve requirement exception and that the defendant understood that by entering a guilty plea he would waive certain rights. The analysis of the court's Rule 11 colloquy, at least as to the first issue, satisfies the second and third requirements of Rule 11's "core concerns." A plea is not rendered involuntary because it was induced as a result of a plea bargaining situation. Williams v. United States, 443 F.2d 1151, 1153 (5th Cir. 1971); Schnautz v. Beto, 416 F.2d 214, 215 (5th Cir. 1969).

The Rule 11 colloquy further shows that the defendant undertook an active participation during the colloquy and at no moment did he inform the court of not understanding the proceedings. He was represented by an experienced trial attorney from Rhode Island who now appears to be more naive than his experience allows for. The defendant however stated he was satisfied with his counsel's representation, he did understand the proceedings, was aware of the maximum and minimum punishment, he understood the safety valve provisions did not apply, he was not coerced or forced to plea guilty, no one offered him anything in return for his guilty plea, he admitted his guilt, and he agreed with his participation in the facts presented in open court by the government.

CRIMINAL 00-693 (PG)                    11

I take into consideration the time elapsed before the defendant submitted his motion for plea withdrawal.  It is well settled "the longer a defendant waits before moving to withdraw his plea, the more potency his motion must have in order to gain favorable consideration." United States v. Parrilla-Tirado, 22 F.3d 368, 373 (1st Cir. 1994) (citing United States v. Doyle, 981 F.2d at 595).  In the present case the defendant did not wait long to file a *pro-se* motion to withdraw his plea.  Pro-se motion was filed November 6, 2002.  (Docket No. 717, Ex. D.)   The English version of the pro-se motion was filed on December 12, 2002.  (Docket No. 631.) Cf. United States v. González-Vázquez, 34 F.3d 19, 24 (1st Cir. 1994) (four month delay after pleading guilty and two months after the release of his presentence report; motion denied); United States v. Ramos, 810 F.2d at 312 (thirteen day delay; motion denied); United States v. Crosby, 714 F.2d 185, 192 (1st Cir. 1983) (eight week delay;  motion denied); United States v. Keefe, 621 F.2d 17, 20 (1st Cir. 1980) (twenty day delay; motion denied); Núñez-Cordero v. United States, 533 F.2d 723, 726 (1st Cir. 1976) (two week delay; motion denied).

While the defendant argues that he did not receive the advice of counsel when discussing the guilty plea (with Rosado), he did have it before and during the plea.  In relation to the plea agreement, Mr. Rosado acted as an imperfect messenger for a briefly blinded lawyer.  The Rule 11 colloquy and the subsequent dealings of the defendant with government agents ultimately focused on numbers rather than innocence and the legality

CRIMINAL 00-693 (PG)                    12

of Dominican wiretaps, wiretaps which were conducted the way they had always been conducted in the Dominican Republic until the ruling referred to by attorney Castro. The defendant, at this point, had not asserted his legal innocence and if there is a veiled mention of such innocence, it is clearly refuted by the statements at the Rule 11 hearing. Finally, there is no evidence presented from which it may be inferred that the United States breached the plea agreement.

The defendant apparently well or over-represented by at least three attorneys, was allegedly well-represented by none, Mr. Morrison, of whom we know nothing, Mr. Franco, who arguably negotiated a plea but left for a funeral, and Mr. Cicilline, who understandably communicates with Spanish speakers through an interpreter, and heretofore always brings an interpreter to the prison, but sent an unknown (and obviously unpaid) person who dresses, walks and talks like a lawyer to explain an important document to a defendant, an obviously intelligent, articulate, well-educated defendant, who then participated in a comprehensive Rule 11 proceeding, answering seminal questions under oath, and now informing the court that he did not understand what he was doing because a non-lawyer "explained" the plea agreement to him. My conclusion, as to this issue, is that he ultimately did not like the numbers.

On the other hand, that he cannot seek withdrawal on that ground does not mean that the defendant has not shown a "fair and just reason" to retract his plea of guilty. The

CRIMINAL 00-693 (PG)                    13

defendant in this case asserts that had he known he was not preserving his right to continue litigating the legality of the wire interceptions, he would not have plead guilty.[3]  This is the one issue that makes me pause.

In this case, the defendant moved to suppress certain wire interceptions made by Dominican law enforcement agents.  He asserted that the interceptions violated the Fourth Amendment of the United States Constitution because the foreign law enforcement agents acted pursuant to a "joint venture" with United States Drug Enforcement Administration agents.  Additionally, the defendant argued that the interceptions were made without first obtaining judicial authorization as required by the Constitution and laws of the Dominican Republic.  The court denied defendant's motion finding (1) that there was no joint venture between Dominican and United States agents; (2) that the interceptions did not shock the conscience of the court; and (3) that, at the time, the interceptions were conducted in accordance Dominican law.  United States v. Castro, 175 F. Supp. 2d at 133-35. Subsequently, however, the highest court in the Dominican Republic held that the law upon which Dominican authorities conducted the interceptions of telephonic conversations

_____

[3]Additionally, the defendant mentions in passing that he would not have plead guilty had he known of the immigration consequences of such decision.  In other words, that had he known he would be subject to deportation, he would have insisted on going to trial.  But the First Circuit has put claims like this to rest.  It has been "held that deportation is only a collateral concomitant to criminal conviction" and that the failure of counsel "to advise a defendant of [such] collateral consequence is a legally insufficient ground for a plea withdrawal."  United States v. González, 202 F.3d at 25 (citations omitted).

CRIMINAL 00-693 (PG)                    14

violated the Dominican Constitution.  (<u>See</u> Opinion of the Supreme Court of the Dominican Republic of January 15, 2003, Docket No. 717, Ex. G.)  Based on this, the defendant, through his representation in the Dominican Republic, filed an action seeking a declaration that the wire interceptions conducted in this case were unconstitutional.  The Dominican court agreed that defendant's rights had been violated by the interception of his telephonic conversations.  (<u>See</u> Opinion of the Dominican Republic Judicial Service, Docket No. 717, Ex. H.)

There is nothing in the record from which the court can infer that the defendant was at any time explained that by pleading guilty he would not be able to continue challenging the legality of the wiretaps.  As stated above, defendant's representation was not a paragon of effective assistance.  And although the explaining of the substantive terms of the plea agreement represents a closer question, the same cannot be said with respect to the issue of the wire interceptions.  No one explained to defendant that he could not seek further review of this court's denial of his motion to suppress.  I cannot predict that this court or the court of appeals will be receptive of defendant's challenge to the wiretaps in light of the subsequent decision by the Supreme Court of the Dominican Republic.  However, the defendant was never explained that such a challenge was foreclosed by his pleading guilty.  Neither of his lawyers, or the non-lawyer for that matter, explained that to him and the court did not address the issue in the plea colloquy.  Furthermore, the record is clear that

CRIMINAL 00-693 (PG)                    15

the defendant has actively attacked the legality of the wiretaps in this court as well as in the Dominican judicial system.  Here, he has filed about fourteen motions regarding the wiretap issue, (see Docket Nos. 495, 496, 501, 502, 504, 530, 538, 542, 567, 588, 591, 592 and 600) and he retained an attorney who successfully challenged the wire interceptions in the Dominican Republic.  The deficiencies in the performance of defendant's attorneys raise serious doubts as to the third "core concern" of Rule 11.  The prejudice to defendant is also easily identified.  See Unite States v. Colón-Torres, 382 F.3d 76, 90 (1st Cir. 2004).  Therefore, I find that, as to this issue, the defendant has shown a "fair and just reason" to seek withdrawal of his guilty plea.

IV. CONCLUSION

In view of the evidence presented at the hearing held by me and for the reasons set forth above, I recommend that the defendant's motion to withdraw his guilty plea be GRANTED and that he be allowed to withdraw his plea under Fed. R. Crim. P. 11(d)(2)(B).

Under the provisions of Rule 72(d), Local Rules, District of Puerto Rico, any party who objects to this report and recommendation must file a written objection thereto with the Clerk of this Court within ten (10) days of the party's receipt of this report and recommendation.  The written objections must specifically identify the portion of the recommendation, or report to which objection is made and the basis for such objections.

CRIMINAL 00-693 (PG)                          16

Failure to comply with this rule precludes further appellate review.  See Thomas v. Arn, 474 U.S. 140, 155 (1985); Davet v. Maccorone, 973 F.2d 22, 30-31 (1st Cir. 1992); Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co., 840 F.2d 985 (1st Cir. 1988); Borden v. Sec'y of Health & Human Servs., 836 F.2d 4, 6 (1st Cir. 1987); Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir. 1983); United States v. Vega, 678 F.2d 376, 378-79 (1st Cir. 1982); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603 (1st Cir. 1980).

      At San Juan, Puerto Rico, this 25th day of February, 2005.


                                    S/ JUSTO ARENAS
                           Chief United States Magistrate Judge