**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>             v.<br><br>MARTIRES PAULINO CASTRO (5)<br><br>        Defendant. | CR. NO. 00-693 (PG) |

**OPINION AND ORDER**

Before the Court is Chief Magistrate Judge Justo Arenas' Report and Recommendation ("R&R") (Docket No. 753), regarding defendant's *pro se* motion to withdraw his guilty plea. (Docket No. 685.) The Magistrate Judge recommends that defendant's motion be granted inasmuch as he has shown a fair and just reason to withdraw his guilty plea. Upon carefully reviewing the record, the R&R, the objections (Docket Nos. 754 & 755), for the following reasons, the Court **APPROVES AND ADOPTS** the Magistrate Judge's R&R and **GRANTS** defendant's motion.

**FACTUAL AND PROCEDURAL BACKGROUND**[1]

On September 13, 2000, the Grand Jury returned an indictment of Martires Paulino-Castro (hereinafter "defendant" or "Paulino") along with twenty-five other individuals, charging counts relating to conspiracy to sell and distribute narcotics. (Docket No. 31.) On October 28, 2002, after reaching an agreement with the government, Paulino pled guilty to one count of conspiracy to possess with intent to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 846. (Docket No. 618.) On December 12, 2002, Paulino moved *pro se* to withdraw his guilty plea. (Docket No. 685.) The government was given twenty days to respond (Docket No. 687) and eventually filed their opposition on January 23, 2004. (Docket No. 691.) Following several procedural events, the Court granted defendant until June 18, 2004, to file any supplemental

---

[1] The parties do not object to the Magistrate Judge's findings regarding the Evidentiary Hearing or the Change of Plea Colloquy. Therefore, the Court culls the relevant facts from the Magistrate Judge's R&R.

Cr. No. 00-693(PG)                                                        Page 2

pleadings in support of his motion to withdraw; and the government until July 6, 2004, to file any responses thereto. (Docket No. 713.)  Defendant filed his supplemental memorandum on June 22, 2004, (Docket No 717), the government filed its opposition on August 2, 2004, (Docket No. 721), and defendant's reply in opposition was filed on August 18, 2004. (Docket No. 725.)  The matter was referred to Chief Magistrate Judge Justo Arenas who, upon reviewing the record, determined that an evidentiary hearing was warranted in light of the factual disputes regarding whether or not the defendant had proffered a fair and just reason for requesting withdrawal. (Docket No. 738.)  The hearing was set for November 22, 2004, later rescheduled for December 8, 2004, and finally held on January 19, 2005. (Docket No. 746.)

At the evidentiary hearing, John Cicilline, a Rhode Island attorney, testified adopting his affidavit of December 20, 2003.  In the affidavit, Mr. Cicilline attested that from the moment he entered an appearance in the case, the defendant always insisted that he wanted a trial and that upon returning to Puerto Rico on October 26, 2002, he learned that the defendant had retained attorney José Franco, and that the case would be a plea.

The plea agreement was received on October 28, 2002.  When it was received, Mr. Franco was not present. In theory, the defendant was represented by three attorneys: Mr. Franco who was, however, not present because he said he had to leave for a funeral; Daniel Morrison, unexplainably absent; and Mr. Cicilline who ultimately represented Paulino at the hearing. Pauling agreed to proceed without Mr. Franco.  Mr. Cicilline, not being able to discuss the plea agreement with the defendant in the Spanish language, entrusted the discussion of the same to Mr. Carlos Rosado who was "associated in some way to Mr. Franco". Mr. Cicilline had met Mr. Rosado at the Metropolitan Detention Center ("MDC") in Guaynabo earlier in the year and noted that he privately met with clients and spoke authoritatively about the law.  Mr. Cicilline asked Mr. Rosado to go to the cellblock and read the plea agreement to the defendant. Mr. Cicilline thought that Paulino was cooperating with the government since he had discussed with Mr. Rosado subsection 5K1.1 of the United States

Cr. No. 00-693(PG)                                                    Page 3

Sentencing Guidelines covering downward departures based on substantial assistance to authorities. See U.S.S.G. §5K1.1. The defendant, an industrial engineer, agreed that he would be pleading to count four of the indictment, a drug conspiracy count.

At the change of plea hearing, Paulino informed that he had enough time to consult with Mr. Franco and Mr. Cicilline and was satisfied with their services until then. He further acknowledged not having any doubts about pleading guilty, his rights had he gone to trial, and waiving the right to incriminate himself. He noted that his attorney had explained to him and he had understood what the minimum and maximum sentences provided by law were, including a minimum of 10 years, as well as the provisions of a fine, supervised release for at least five years, and the special monetary assessment. Paulino also acknowledged that nobody forced or threatened him to plead guilty, that no one had promised him anything outside of the plea agreement, that no predictions were made to him as to what his sentence would be, and that the judge was not bound by the agreement. The defendant acknowledged that he was explained that the court could impose a high sentence, including life, and that if he received a sentence that was higher than the one he expected, such would not be grounds to withdraw the plea. Paulino also stated he understood that his lawyer had explained his failure to meet the requirement of the safety valve and that he had been rendered effective assistance of counsel by both Mr. Franco and Mr. Cicilline. The Court asked Paulino whether the plea contained all the promises, terms, and conditions agreed to by the lawyers and prosecutors, and he said yes. The judge also explained that the sentence was appealable. Lastly, defendant agreed to submit himself to a debriefing by the government and that if the information provided was truthful, he would be sentenced to the lower end of the guideline range.

Mr. Cicilline further testified that in the days following the plea, he met with Paulino on several occasions and was told that the plea had not been adequately explained to him and that the individual who had taken the responsibility of explaining the plea was not a lawyer.  Mr. Cicilline

Cr. No. 00-693(PG)                                                        Page 4

apparently did not initially understand the challenge.  He then advised the defendant to defer action on his *pro se* motion to vacate to give the defendant a chance to be debriefed and get a reduced sentence. He seemingly assumed that the issue would become moot because he thought defendant was cooperating with the government.  The Magistrate Judge indeed concluded that apparently Mr. Cicilline thought the government was going open the door of the prison and let the defendant out based upon what he was telling them. Ultimately, the Assistant United States Attorney did not approve a 5K reduction.

Mr. Cicilline further testified that he had not informed the defendant of all the things he would be waiving upon pleading guilty.  There were limited discussions of a guilty plea because Assistant United States Attorney Jared Lopez wanted the defendant to cooperate.  Mr. Cicilline had discussed the 5K, but the attorney knew that the recommendation in the agreement was for 15 years, and that the defendant never thought that he would get 15 years. Mr. Cicilline further indicated that he never had a serious discussion with Paulino about numbers. While the plea was beneficial, it was not what the defendant would be expecting.  Mr. Cicilline also stated he always brought an interpreter with him and had two lawyers who spoke Spanish.

Attorney Tomas Castro, an attorney from the Dominican Republic, who was retained by the defendant in 2002, also testified at the hearing in relation to the wire interceptions in the Dominican Republic.  Mr. Castro made reference to a decision of the highest court of the Republic which decided that the orders to intercept communications issued by the district attorney in relation to Paulino were illegal because they were not in accord with the requirements of the Dominican Constitution.  The Dominican court order is dated October 15, 2003. The order also applied to all wire interceptions made under a regulation issued by the district attorney of Santo Domingo.

### DISCUSSION

**I. Standard of Review**

Pursuant to 28 U.S.C. § 636(b)(1)(B), Local Rule 72, and Local Criminal Rule 157.1; a District Court may refer dispositive motions to a U.S. Magistrate Judge for a Report and Recommendation. The adversely affected party

may contest the Magistrate Judge's findings by timely filing objections. See Local Rule 72(d). If objections are filed, the District Judge shall make a de novo determination of those portions of the report to which [an] objection is made. Id. Failure to timely file specific objections waives the right to review by the District Court, and waives the right to appeal the District Court's order. See U.S. v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); see also U.S. v. Raddatz, 447 U.S. 667, 673(1980).

**II. Motion to Withdraw a Plea**

Federal Rule of Criminal Procedure 11, states in pertinent part, that a defendant may withdraw a plea of guilty after the court accepts the plea, but before it imposes a sentence if the defendant can show a fair and just reason for requesting the withdrawal. Fed.R.Crim.P. 11. "What constitutes a 'fair and just' reason in light of the abuse of discretion standard is best resolved by the courts on a case-by-case basis." U.S. v. Ramos, 810 F.2d 308, 311-12 (1st Cir. 1987). "Federal Rule of Criminal Procedure 32 governs the withdrawal of guilty pleas." U.S. v. Alvarez-Del Prado, 222 F.3d 12, 15 (1st Cir. 2000). See U.S. v. Ramos, 810 F.2d 308, 311 (1st Cir.1987) (noting that Rule 32(d) codified the "fair and just reason" standard of Kercheval v. U.S., 274 U.S. 220 (1927)). The factors to be considered in determining whether there is a fair and just reason are: "1) the force and plausibility of the proffered reason; 2) the timing of the request; 3) whether the defendant has asserted his legal innocence; and 4) whether the parties had reached a plea agreement." U.S. v. Gray, 63 F.3d 57, 60 (1st Cir. 1995). To determine "whether an asserted reason for withdrawal meets the Rule 32(e) standard, the district court must look to the totality of the circumstances, paying special attention to whether the plea was knowing, voluntary, and intelligent under Rule 11." Id.,see U.S. v. Gray, 63 F.3d 57, 60 (1st Cir. 1995)("In determining whether there has been a violation of one of the core concerns of Rule 11, we review the totality of the circumstances surrounding the Rule 11 hearing at which the defendant pled guilty"). The three "core concerns" of a Rule 11 hearing are: "1) absence of coercion; 2) the defendant's understanding of the charges; and 3) the defendant's knowledge of the consequences of the guilty plea." Gray,

Cr. No. 00-693(PG)                                                    Page 6

63 F.3d at 60. See U.S. v. Pellerito, 701 F.Supp. 279, 290-91 (D.P.R. 1988)("A critical consideration is whether the defendant voluntarily and intelligently entered into a guilty plea with full understanding of his rights and the consequences of his plea within the meaning of Rule 11".) See also Ramos, 810 F.2d at 312. A technical violation will often be deemed harmless, however, "a total failure to address one of Rule 11's "core concerns" mandates that the guilty plea be set aside. Id. (citation omitted). "In the absence of such a "total failure," the question to be determined is whether deficiencies in the Rule 11 hearing affected the defendant's "substantial rights." Id. (citing Fed.R.Crim.P. 11(h)).

Defendant bears the burden of showing a "fair and just reason" to withdraw his guilty plea. See Fed.R.Crim.P. 32(d); Pellerito, 701 F.Supp. at 290-91. "If the defendant shows sufficient reason for withdrawing the plea, the court must also consider any possible prejudice to the government." Alvarez-Del Prado, 222 F.3d at 15; see Ramos, 810 F.2d at 313 ("Only after a defendant has brought forward a 'fair and just' reason, is the government compelled to demonstrate prejudice to its legitimate interests as part of its successful defense against a Rule 32(d) motion).

**III. Analysis**

Defendant argues that his request to withdraw his plea should be granted because his decision to plea was not knowing or voluntary since he was never informed that by pleading guilty he would be forfeiting his right to continue challenging the wiretaps conducted by law-enforcement agents in the Dominican Republic.

Dominican law enforcement agents, acting pursuant to a "joint venture" with U.S. Drug Enforcement Administration agents, intercepted certain telephonic conversations that eventually led to the indictment charging defendant with several crimes. Subsequently though, the highest court in the Dominican Republic held that the law upon which Dominican authorities conducted the interception of telephonic conversations violated the Dominican Constitution. In light of said decision, Paulino, through his representation in the Dominican Republic, filed an action seeking a declaration that the wire

Cr. No. 00-693(PG)                                                        Page 7

interceptions conducted in this case were unconstitutional. The Dominican court agreed that defendant's rights had been violated by the interception of his telephonic conversations.

The Magistrate Judge concluded that no one explained to Paulino that by pleading guilty he would not be able to continue challenging the legality of the wiretaps or that he could not seek further review of this court's denial of his motion to suppress. Although not predictable whether this court or the court of appeals would be receptive to defendant's challenges to the wire taps, the Magistrate concluded that by pleading guilty, such a challenge was foreclosed.  The Magistrate Judge further found that the issue had not been addressed at the plea colloquy and that the record clearly showed that the defendant has actively attacked the legality of the wiretaps in this court as well as in the Dominican judicial system.  In sum, the Magistrate Judge determined that the deficiencies in the performance of Paulino's attorneys raised serious doubts as to the third "core concern" of Rule 11. Accordingly, the Judge recommends that defendant be allowed to withdraw his guilty plea.

The government objects arguing that defendant's allegation that he was not informed that he would be foreclosed from continuing to challenge the legality of these wiretaps is not a fair and just reason and that the court must consider that the government would be prejudiced by the withdrawal of the plea. The government insists that the record clearly shows defendant's plea was intelligently made and that he understood its consequences.

Upon reviewing the record, the Court concurs with the Magistrate Judge's assessment of the record.  The First Circuit Court of Appeals has recognized several factors that may enter the decisional calculus of the trial court decision to withdraw the plea such as the force of the defendant's proffered reason for withdrawal; the timing of the request; and the defendant's assertion of legal innocence. Alvarez-Del Prado, 222 F.3d 12, 15 (1st Cir. 2000)(quoting United States v. Doyle, 981 F.2d 591, 594 (1st Cir.1992)(internal quotations omitted)).

With regards to the force and plausibility of defendant's proffered reason, a review of the events surrounding defendant's plea reveal a lack of

assistance from his lawyers and non-lawyer for that matter, in light of their failure to explain one of the major consequences of pleading guilty, forfeiting his right to challenge the wiretaps. Indeed, one of the critical considerations in the Court's analysis is "whether the defendant voluntarily and intelligently entered into a guilty plea with full understanding of his rights and the consequences of his plea within the meaning of Rule 11." U.S. v. Pellerito, 701 F.Supp. at 290-91; see Gray, 63 F.3d at 60 (holding that one of the "core concerns" of Rule 11 is that the defendant had knowledge of the consequences pleading guilty.)  The fact that defendant was unaware that by pleading guilty he would not be able to pursue his challenge of the illegal wiretaps is reason enough to grant his request.  See Gray, 63 F.3d at 60("a total failure to address one of Rule 11's "core concerns" mandates that the guilty plea be set aside.")

Another factor the Court considers is the timing of the request which is particularly noteworthy here given the short time that elapsed between the guilty plea and the filing of the motion. Defendant filed his first *pro se* motion seeking withdrawal just two weeks after the plea agreement was received. (See Docket No. 717, Exhibit D.) Indeed, "a swift change of heart reduces the likelihood of prejudice to the government from permitting withdrawal, and strongly indicates that the plea was entered in haste and confusion." Ramos, 810 F.2d at 312 (internal quotations omitted).

In sum, the Court finds defendant has met his burden of showing a "fair and just reason" to withdraw his guilty plea. We therefore consider any possible prejudice to the government.  See Alvarez-Del Prado, 222 F.3d at 15.

The government argues the Court should consider the potential prejudice they would face, namely, the burden of attempting to locate witnesses and obtain evidence of a five year old case. In all fairness, that burden may be onerous, however, when balanced with the constitutional concerns and circumstances surrounding defendant's plea, the Court finds the government's allegation of prejudice insufficient to maintain the plea, specially in light total failure to address one of Rule 11' core concerns and the prejudice to defendant's substantial rights. See Ramos, 810 F.2d at 312 ("[s]o important

Cr. No. 00-693(PG)                                                      Page 9

is strict compliance with Rule 11 procedures that pleas entered unconstitutionally or contrary to the rule should almost always be allowed to be withdrawn ..."(internal quotations omitted)). The Magistrate Judge, who had the benefit of an evidentiary hearing, determined the circumstances of this case warranted granting defendant's motion.  The government fails to raise any compelling reason to show otherwise[2].

### Conclusion

WHEREFORE, for the foregoing reasons, the Court adopts the Magistrate Judge's recommendation and GRANTS defendant's motion to withdraw his guilty plea.

**IT SO ORDERED.**

In San Juan, Puerto Rico, August 2, 2005.


                                              S/JUAN M. PEREZ-GIMENEZ
                                              U.S. District Judge

---

[2] Paulino also argued that the plea had not been explained to him by a lawyer. However, the Magistrate Judge concluded that Paulino was not coerced or forced to plea guilty and he understood the charges and the general circumstances surrounding his plea. The Magistrate Judge concluded that Paulino, an obviously intelligent, articulate, well-educated defendant, participated in a comprehensive Rule 11 proceeding, answering seminal questions under oath, and only after he had "seen the numbers" informed that he did not understand what he was doing because a non-lawyer "explained" the plea agreement to him. The Magistrate Judge understood based on record of the case as well as the evidentiary hearing, that Paulino's claim that the plea had not been explained to him by a lawyer, did not warrant withdrawing the plea inasmuch as what had ultimately happened was that he did not like the numbers after he had knowingly and intelligently pleaded guilty. The parties do not raise objections to the Magistrate Judge's conclusion, accordingly, we adopt the Magistrate Judge's recommendation and disregard this argument as a basis for grating the withdrawal request.